

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-26-2002

# Howze v. Comm Social Security

Precedential or Non-Precedential: Non-Precedential

Docket No. 01-4470

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"Howze v. Comm Social Security" (2002). *2002 Decisions.* Paper 774.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/774

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 01-4470

_____

DONALD S. HOWZE
                    Appellant

v.

JOANNE B. BARNHART*,
COMMISSIONER OF SOCIAL
SECURITY,

(Pursuant to Rule 43(c), F.R.A.P.)

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA
D.C. Civil No. 01-cv-00975
District Judge:  The Honorable Gary L. Lancaster

_____

Submitted Under Third Circuit LAR 34.1(a)
November 19, 2002

_____

Before: BARRY, AMBRO, <u>Circuit Judges</u>, and ACKERMAN,* <u>District Judge</u>

(Opinion Filed:      November 25, 2002              )

_____

   * The Honorable Harold A. Ackerman, United States District Judge for the District of New Jersey, sitting by designation.

OPINION

BARRY, <u>Circuit Judge</u>

Appellant Donald S. Howze, Jr., applied for Disability Insurance Benefits and Supplemental Security Income, alleging that he had been unable to work since March 11, 1996 due to degenerative disc disease. His application was denied initially and on reconsideration. After a hearing, the Administrative Law Judge ("ALJ") found that although appellant's degenerative disc disease and depression prevented him from performing the full range of light work, he was not disabled because he was capable of making an adjustment to work which exists in substantial numbers in the national economy. The Appeals Council denied review and appellant filed suit in the United States District Court for the Western District of Pennsylvania.

He now appeals the Order of the District Court, dated December 11, 2001, which granted appellee's motion for summary judgment. He argues that the ALJ (1) mistakenly failed to find that several of his ailments were severe, and (2) improperly weighed the evidence, including the evidence presented by a vocational expert, leading the ALJ to conclusions regarding appellant's ability to work which were unsupported by substantial evidence. We have jurisdiction pursuant to 28 U.S.C. § 1291 and will affirm.

Appellant's first contention is that the ALJ erred at step two of the sequential evaluation process for disability claims. <u>See</u> 20 C.F.R. §§ 404.1520(c) and 416.920(c)

2

(explaining that, at step two, the factfinder determines which, if any, of the claimant's impairments are severe). Appellant argues, first, that the ALJ should have found that his impairment of his left upper arm was severe, because it significantly restricts his ability to perform basic work activities. When reviewing an ALJ's findings in a Social Security case, we are limited to determining whether those findings are supported by substantial evidence. See 42 U.S.C. § 405 (g).

The evidence in the record which relates to appellant's arm includes a letter, dated March 14, 1996, from Dr. Arnold S. Broudy diagnosing appellant with various shoulder problems, tennis elbow and arthritis in his left thumb, and prescribing treatment. It also includes a treatment note, dated May 6, 1996, in which Dr. Cynthia G. Ayers notes that EMG and nerve conduction studies of appellant's left shoulder and hand were negative, as well as a consultative report, dated February 2, 1997, in which Dr. James V. H. Ballantyne opines that appellant's shoulders, arms and hands are problem-free. There are also sporadic references to appellant complaining of pain and discomfort in his left upper arm. When the ALJ asked appellant about his arm problems, he explained that he believed that they stemmed from "the way I was sleeping." T. at 60. He also testified that Dr. Broudy "gave me something for tennis elbow." Id. Neither the evidence in the record nor appellant's testimony supports a finding that the pain in his arm significantly restricted his ability to work. Therefore, the ALJ did not err when he did not find that appellant's arm problems were severe.

Appellant also argues that the ALJ mistakenly failed to find that the following

3

ailments were severe: "need for a cane . . . degenerative joint disease, obesity, diabetes mellitus, hypertension, and major depression disorder." Appellant's Brief at 6. We take them in order. First, appellant's need for a cane is discussed below in the context of his challenge to the ALJ's weighing of the evidence at step five of the sequential evaluation process. Second, he does not point to any evidence of "degenerative joint disease" in the record and we are not able to find any, aside from the left arm problems discussed above. Third, the ALJ considered the evidence regarding appellant's diabetes, hypertension and weight, but concluded that there was no evidence that these conditions had caused end organ damage or impacted on appellant's ability to work. While appellant argues that the ALJ ignored evidence that his diabetes damaged his right eye, that is, that it caused end organ damage, the treatment note on which he relies is to the contrary. On April 4, 1997, Dr. Kahn noted that an eye examination conducted in February of 1997 was "neg. for d. retinopathy." T. at 274, 275. Finally, the ALJ did find that appellant's depression was a severe disorder.[*]

Appellant's second major contention relates to step five of the sequential evaluation process for disability claims. See 20 C.F.R. §§ 404.1520(f) and 416.920(f) (explaining that, at step five, the factfinder determines whether the claimant's impairments prevent him or her from working). He claims that the ALJ failed to properly weigh the medical evidence in the record in coming to his determination that appellant was able to do work

---

[*] The ALJ also found that appellant's degenerative disc disease was severe.

4

which exists in the national economy.

First, appellant argues, the ALJ relied on Dr. Ayers's evaluation of October 6, 1996 without taking into account the fact that the doctor stated that appellant could perform for, at best, two weeks. Appellee counters that when Dr. Ayers wrote that "for two weeks at least" appellant should not lift over 25 pounds, should not do excessive bending or kneeling, and should only do limited overhead work, what she meant was that these restrictions were only temporary. Appellee's interpretation is reasonable, and the ALJ permissibly relied on her conclusions in determining the extent of appellant's limitations.

Appellant also argues that the ALJ concluded based on Dr. Ayers' report that he was capable of light work, when the limitations imposed by the doctor would mean that he was not capable of light work. See 20 C.F.R. §§ 404.1567(b) and 416.967(b)(defining light work). This argument fails because the ALJ acknowledged and took into account the fact that Dr. Ayers' conclusions meant that appellant's capacity for light work was diminished.

Finally, appellant argues that the ALJ improperly rejected Dr. Ayers' conclusion that appellant suffers from a herniated disc. We disagree. The record reveals that Dr. Susan S. Kemp performed an MRI of appellant's cervical and lumbar spine on May 20, 1996. With regard to his lumbar spine, Dr. Kemp concluded that: "In addition to a diffusely bulging annulus at the L5-S1 level, there is a more focal disc herniation centrally and to the left of midline at this level that abuts and posteriorly displaces the left S1 root sheath." T. at 208. In letters dated June 2, 1996 and August 20, 1996, neurosurgeon Dr. Howard M. Gendell explained to Dr. Ayers that while the MRI demonstrated "some eccentricity to the left

side," a subsequent myelogram and CT scan revealed that he did not have a herniated disc. T. at 169, 207. On September 3, 1996, appellant saw orthopedic surgeon Dr. Robert G. Liss for a second opinion; Dr. Liss concluded that while the "studies demonstrate that he has degenerative changes about the lumbosacral disc," there was "no clear impingement on the nerve roots at this level." T. at 202. On March 16, 1998, Dr. Abdul Khan reported that appellant had a "disc bulge" at L5-S1. T. at 197. In sum, there is substantial evidence in the record to support the ALJ's finding that appellant does not suffer from a herniated disc.

Turning to the evidence supplied by Dr. Khan, who, like Dr. Ayers, is one of appellant's treating physicians, appellant argues that the ALJ erred by giving insufficient weight to Dr. Khan's medical source statement, dated March 24, 1998, in which he imposed limitations which would mean that appellant was not capable of performing even sedentary work.[**] T. at 197-200. See 20 C.F.R. §§ 404.1567(a) and 416.967(a)(defining sedentary work). The ALJ determined that appellant was not as limited as Dr. Khan concluded, and adopted instead the limitations imposed by Dr. Ayers in her 1996 report. While appellant argues that it is improper in the case of a degenerative illness like his to

---

[**] Appellant appears to argue that Dr. Khan's report of April 26, 1999, which was submitted to the Appeals Council after the ALJ had already issued his decision, should be considered. See Appellant's Brief at 8; Appendix D, Exhibit 1. When a claimant seeks to rely on evidence that was not before the ALJ, a court may remand to the Commissioner of Social Security, "but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ." See Matthews v. Apfel, 239 F.3d 589, 593 (3d Cir. 2001). As appellant has not made the required showing, we will not consider Dr. Khan's 1999 report.

use older evidence to contradict newer findings, the ALJ was not bound to accept all of Dr. Khan's conclusions merely because his report was the most recent. There is substantial evidence in the record, including the reports of Dr. Grendell, Dr. Liss and Dr. Ballantyne, to support the ALJ's determination that appellant is less restricted than Dr. Khan concluded he was. In any event, even if the ALJ had adopted all of Dr. Khan's limitations, appellant would not have been found disabled. When the ALJ asked the vocational expert to assume that appellant was as restricted as Dr. Khan found that he was, the vocational expert testified that there were still jobs available that appellant could do, including alarm monitor, information clerk and receptionist.

Appellant also contends that the ALJ improperly ignored the report of Dr. Paul Franke, who wrote on October 11, 1996 that appellant could return to work immediately but could only work part-time. The ALJ explained that he was rejecting Dr. Franke's conclusions because they conflicted with the findings of Dr. Ayers, who was appellant's treating physician. In addition to this fact, the ALJ found that Dr. Franke's findings "are not supported by detailed diagnostic and clinical evidence that clearly outline the basis for the severity." T. at 19.

Appellant's argument that the ALJ gave insufficient weight to certain of the conclusions of Dr. Robert J. Lanz, Jr., who performed a psychiatric evaluation of appellant on April 15, 1998 at the behest of the Commissioner, also fails. The ALJ's conclusions with regards to appellant's depression and the degree of limitation it causes are adequately

7

supported by the findings of Dr. Elliott T. Shinn, appellant's treating psychiatrist.[***]

Appellant's argument that remand is necessary because the ALJ failed to address the fact that he uses a medically-required hand-held device fails as well. He testified that Dr. Kahn provided him with a cane to address left-leg weakness which causes him to lose his balance and fall. The references in the record include a reference by Dr. Khan to a "script" for a cane; in addition, Dr. Khan checked the box for "hand-held assistive device medically required for ambulation" in his 1998 report. T. at 199, 272. Other than that, there are multiple references to the fact that appellant uses a cane but no discussion of its medical necessity. The evidence presented by appellant was insufficient to support a finding that his cane was medically necessary. "To find that a hand-held assistive device is medically required, there must be medical documentation establishing the need for a hand-held assistive device to aid in walking or standing, and describing the circumstances for which it is needed[.]" Social Security Ruling 96-9p. Even if the ALJ erred regarding the cane, though, any error was harmless as he asked the vocational expert to take the cane into account and there were still jobs available that appellant could perform.

Finally, appellant's argument that the ALJ failed to present the vocational expert with hypotheticals which incorporated certain findings of appellant's treating physicians

---

[***] There is no evidence to support appellant's allegation that the ALJ was biased in that he failed to consistently apply the principle that a treating physician's findings are entitled to more weight than are those of a non-treating physician. Both the ALJ's decision not to adopt all of Dr. Kahn's findings and his decision to defer to Dr. Shinn were supported by substantial evidence.

8

also fails, as does his argument that the ALJ failed to properly consider the vocational expert's responses to the hypothetical questions proposed by counsel. The ALJ asked the vocational expert whether there were jobs that appellant could perform assuming that he was as limited as Dr. Khan concluded, and the vocational expert testified that there were.

The ALJ's hypothetical included Dr. Khan's limitation on appellant's ability to reach. The fact that he did not incorporate any further limitations flowing from appellant's arm problems was not error as the record is devoid of support for further limitations. Relatedly, the fact that the jobs identified by the vocational expert required manual dexterity is not reason to reject them, as there is no evidence to support appellant's claim that he lacks such dexterity. Finally, appellant's counsel's hypotheticals were properly rejected because they were based on the testimony of appellant and the conclusions of Dr. Lanz, neither of which the ALJ fully credited.[****]

The order of the District Court of December 11, 2002 will be affirmed.


TO THE CLERK OF THE COURT:

Kindly file the foregoing Opinion.

_____

_____

[****] Appellant offers no support for his argument that, in evaluating his testimony, the ALJ was not entitled to consider the fact that his eligibility for disability benefits from his former employer was contingent on his entitlement to social security benefits.

9

Circuit Judge